## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| MARK PETERSEN, et al. ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-cv-3247 |
| ) | |
| KRISTINE TUTTLE, and ) | |
| PREFERRED TITLE AND ) | |
| ESCROW, INC., ) | |
| ) | |
| Defendants. ) | |

### OPINION AND ORDER

This matter is before the Court on Defendant Kristine Tuttle's Motion to Dismiss (d/e 16) and Defendant Preferred Title and Escrow, Inc.'s Motion to Dismiss (d/e 17). Plaintiffs' First Amended Complaint (d/e 15) states claims upon which relief can be granted, so Defendants' Motions (d/e 16, 17) are DENIED.

## I.     BACKGROUND

On September 5, 2024, Mark Petersen ("Plaintiff Petersen"), Rocklin #1, LLC ("Rocklin1") and Rocklin #2, LLC ("Rocklin2") (collectively "Plaintiffs"), filed a three-Count Complaint in this Court, asserting that Defendant Tuttle and Preferred Title and Escrow, Inc.

1

("Defendant Preferred") breached an oral escrow agreement and Defendant Tuttle also breached a fiduciary duty to hold Deeds in escrow regarding a real estate transaction. (d/e 1).

On November 8, 2024, both Defendants filed their respective Motions to Dismiss Plaintiffs' Complaint for failure to state a claim. (d/e 6, 9). On November 25, 2024, Plaintiffs filed their Amended Complaint. (d/e 15). The Amended Complaint alleges one breach of contract claim against Defendant Preferred and a breach of contract claim, a breach of fiduciary duty claim, and two fraud claims against Defendant Tuttle. (d/e 15, p. 13-17).

On December 9, 2024, Defendants each moved to dismiss each of the counts against them for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (d/e 16, 17). On January 3, 2025, Plaintiffs filed their Combined Response to Defendants' motions. (d/e 21).

## II.    LEGAL STANDARD

Defendants move to dismiss Plaintiffs' Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Complaint d/e 16, 17.    A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint.

2

Christensen v. Cty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007). A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief" that puts the defendant on notice of the allegations. Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (quoting Fed. R. Civ. P. 8(a)(2)). The court accepts all well-pleaded facts alleged and draws all possible inferences in the plaintiff's favor. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

The complaint must put forth plausible grounds to demonstrate a claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plausible claim is one from which the court is able to draw reasonable inferences that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Additionally, the complaint must raise a reasonable expectation that discovery will reveal evidence of liability. Id. at 663; Twombly, 550 U.S. at 545. A complaint merely reciting a cause of action or conclusory legal statements without support is insufficient. Iqbal, 556 U.S. at 663.

The Plaintiffs in this matter are alleging claims of fraud, so Federal Rule 9(b) applies. Federal Rule 9(b) imposes a higher pleading standard than required under Rule 8. "Plaintiffs must plead the 'who,

what, when, where, and how: the first paragraph of any newspaper story' of the alleged fraud." <u>Rocha v. Rudd</u>, 826 F.3d 905, 911 (7th Cir. 2016). "The complaint must state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" <u>United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.</u>, 772 F.3d 1102, 1106 (7th Cir. 2014).

### III.  FACTS

The following facts are taken from Plaintiffs' First Amended Complaint (d/e 15) and are accepted as true at the motion to dismiss stage.  <u>Bible v. United Student Aid Funds, Inc.</u>, 799 F.3d 633, 639 (7th Cir. 2015).

Plaintiff Mark Petersen ("Plaintiff Petersen") is a farmer who lives in Missouri. d/e 15, ¶ 8. Plaintiff Petersen, along with his spouse, are equal owners of Rocklin1 and Rocklin2, two companies that are also named Plaintiffs.  d/e 15, ¶ 9, 12. Prior to the events in this matter, Rocklin1 owned all of the Degeal Farm in Greene County, Illinois, and Rocklin2 owned all of the Fitzsimmons Farm, also located in Greene County, Illinois. d/e 15, ¶13.

4

In early 2022, the Degeal Farm was worth approximately $477,000 and the North Fitzsimmons Farm was worth approximately $525,000. d/e 15, ¶ 18. The Degeal Farm contains a small amount of tillable property, and the North Fitzsimmons Farm contains large areas of tillable property. d/e 15, ¶ 14, 17.

Andrea Schnelten ("Andrea") is Plaintiff Petersen's daughter. d/e 15, ¶ 14. From 2016 to 2021, Andrea and her husband Daryl Schnelten ("the Schneltens") lost several million dollars in operating their two businesses. d/e 15, ¶19. Between 2018 and the end of 2021, Plaintiff Petersen loaned the Schneltens approximately $200,000 to assist them with their businesses and provided additional monetary support by leasing farmland to them. d/e 15, ¶ 20, 21. In 2020, Farm Credit Illinois ("Farm Credit"), an Illinois lending institution, obtained a judgment against the Schneltens for approximately $360,000 for debts owed. d/e 15, ¶ 22, 23. Thereafter, Farm Credit began enforcing the judgment and obtained a Wage Deduction Order against Andrea. Id.

After Farm Credit obtained a judgment against the Schneltens, the Schneltens hired lawyer Kristine Tuttle to assist them with various financial matters. d/e 15, ¶ 30. The Schneltens were

considering a global refinancing of their debts to repay all delinquent loans and satisfy the Farm Credit judgment. d/e 15, ¶ 25. Andrea asked Plaintiff Petersen if real property he owned could be used as additional collateral to secure financing for a loan. d/e 15, ¶ 27. Specifically, Andrea discussed mortgaging the properties, using the North Fitzsimmons Farm and Degeal Farm, as collateral. d/e 15, ¶ 27. Plaintiff Petersen informed Andrea he would be amenable to this arrangement so long as the refinancing loan paid him back the $200,000 he previously lent the Schneltens between 2018 and 2021. d/e 15, ¶ 28.

During this time in early 2022, Plaintiffs believe Defendant Tuttle and Andrea conspired in their attorney-client relationship intending to defraud the Plaintiffs.

In May 2022, Defendant Tuttle prepared quit claim deeds for the Degeal Farm and North Fitzsimmons Farm and emailed them to Elliott Turpin, Plaintiff Petersen's attorney. d/e 15, ¶ 33. Defendant Tuttle emailed Farm Credit inquiring whether the company would accept mortgages on the two properties to satisfy Farm Credit's judgment against the Schneltens. d/e 15, ¶ 34. Farm Credit informed Defendant Tuttle that: Farm Credit's only interest was in the North

Fitzsimmons Farm, if there was a mortgage on the North Fitzimmons farm, then Farm Credit would extend a new loan to the Schneltens to satisfy the judgment, and Farm Credit wanted direct confirmation from Plaintiff Petersen about his willingness to mortgage the property. d/e 15, ¶ 35.

In July 2022, Plaintiff Petersen executed and delivered the previously drafted quit claim deeds to Andrea, which she provided to Defendant Tuttle. d/e 15, ¶¶37, 38. At that time, Plaintiff Petersen believed that all four parties - including himself, Andrea, Defendant Tuttle, and Elliott Turpin - agreed Defendant Tuttle would hold the deeds in escrow pending the closing of a refinancing loan and Plaintiff Petersen's repayment. Id. Plaintiffs allege the communications between Defendant Tuttle, Elliott Turpin, Plaintiff Petersen, and Andrea, and the understanding that the deeds would be held until after the closing of the refinancing loan, formed an Escrow Agreement that was breached in September 2022.

From July 2022 to September 2022, Farm Credit asked Defendant Tuttle for confirmation from Plaintiff Petersen that he was willing to mortgage the North Fitzsimmons Farm as collateral for the Schneltens' loan. d/e 15, ¶40. Defendant Tuttle provided a copy of

7

the North Fitzsimmons Farm quit claim deed as evidence that Rocklin2 would grant Farm Credit a mortgage and Andrea would become the owner of the North Fitzsimmons Farm. d/e 15, ¶ 41.

In early September 2022, Farm Credit told Defendant Tuttle that: the new Farm Credit loan ("the 2022 Farm Credit Loan") would be in the amount of the existing Farm Credit judgment ($423,000), "the loan had a six month maturity," "Farm Credit would receive a mortgage from Rocklin2 of the North Fitzsimmons Farm as collateral," and that, concurrently with the recording of the mortgage of the North Fitzsimmons Farm, Preferred Title and Escrow, Inc. ("Defendant Preferred") would record the North Fitzsimmons Farm deed. d/e 15, ¶ 43.

On September 6, 2022, the 2022 Farm Credit Loan, which satisfied the Farm Credit judgment, closed. d/e 15, ¶45. Additionally, Defendant Preferred recorded the two previously executed quit claim deeds on Degeal Farm and North Fitzsimmons Farm and a mortgage of North Fitzsimmons Farm with the Green County Recorder of Deeds. d/e 15, ¶ 46. Neither Plaintiff Petersen nor Elliott Turpin, his attorney, were notified of this recording, the removal of the deeds from escrow, or the proceeds of the 2022 Farm Credit Loan would not

be used to pay Plaintiff Petersen back. d/e 15, ¶ 46, 47. As a result of these recordings, ownership of the Degeal Farm and North Fitzsimmons Farm was transferred from Rocklin1 and Rocklin2, respectively, to Andrea. d/e 15, ¶ 48, 50.

On March 1, 2023, the Schneltens defaulted on the 2022 Farm Credit Loan. d/e 15, ¶ 51. Around March 5, 2023, Andrea asked Plaintiff Petersen for another loan in the amount of $195,000. d/e 15, ¶ 55. To secure this money from her father, Andrea promised she was close to securing the refinancing loan, which would repay the $200,000 debt Andrea owed to Plaintiff Petersen. d/e 15, ¶ 56. Plaintiff Petersen was unaware at the time of Andrea's request for additional funds that the executed deeds were already recorded, a refinancing loan was secured for the judgment amount owed to Farm Credit, and Farm Credit possessed a mortgage on the North Fitzsimmons Farm. d/e 15, ¶ 57.

On March 6, 2023, Plaintiff Petersen agreed to lend Andrea $195,000 and authorized the wiring of the funds to two of the Schneltens' creditors. On March 7, 2023, Defendant Tuttle emailed Marci Collins at Defendant Preferred and asked her to prepare a new settlement statement for a refinancing loan sought from Blue Ridge,

a lender, that reflected the $195,000 payment Plaintiff Petersen lent the Schneltens the day prior. d/e 15, ¶ 62. The settlement statement specified an $18,000 payment to Defendant Tuttle's firm and several thousand dollars to Defendant Preferred for its title and escrow services. d/e 15, ¶ 63. There was no mention of any debt owed to Plaintiff Petersen or that any payments were to be made to him to satisfy the $200,000 loan. Id.

In early May 2023, Elliott Turpin, Plaintiff Petersen's lawyer, asked Defendant Tuttle the status of the refinancing loans and deeds. d/e 15, ¶ 64, 65. Defendant Tuttle informed Elliott Turpin the deeds for the Degeal Farm and North Fitzsimmons Farm had been recorded in Greene County. d/e 15, ¶ 65. Defendant Tuttle did not inform Elliott Turpin about the Farm Credit mortgage on the North Fitzsimmons farm. d/e 15, ¶ 66. After discovering this information, Plaintiff Petersen agreed to mediation between him and Andrea, in lieu of immediate litigation. d/e 15, ¶ 67.

Andrea told Plaintiff Petersen at the mediation that the two Rocklin property deeds were released from escrow and that Defendant Preferred recorded the deeds. However, Andrea did not mention the North Fitzsimmons Farm mortgage or that Farm Credit

held it. d/e 15, ¶ 68. After the mediation, Plaintiff Petersen and Andrea entered into a Settlement Agreement. Per this agreement, Andrea stipulated she owed the 2023 debt ($195,000) to Plaintiff Petersen and Plaintiff Petersen agreed to forbear from suing the Schneltens until December 31, 2023, if the Schneltens paid him $750 per month through that date. d/e 15, ¶ 69. On July 12, 2023, unbeknownst to Plaintiff Petersen, the Schneltens filed for Chapter 11 Bankruptcy. d/e 15, ¶ 72.

Only after Plaintiff Petersen's bankruptcy counsel reviewed pertinent documents did Plaintiff Petersen discover the Scheltens had obtained the 2022 Farm Credit Loan, granted Farm Credit the North Fitzsimmons Farm mortgage, and already defaulted on the 2022 Farm Credit Loan. d/e 15, ¶ 74. Plaintiff Petersen has not been paid the full debt owed to him by the Schneltens, and he, along with his companies, Rocklin1 and Rocklin2, have lost their respective ownership interest in the Degeal and North Fitzsimmons properties. d/e 15, ¶ 75.

## IV.   JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different

states and the amount in controversy exceeds $75,000. Plaintiff Petersen is a resident of Missouri. Rocklin1 and Rocklin2 are each Missouri limited liability companies, with principal places of business in Clayton, Missouri. Defendant Tuttle is a resident of Jersey County, Illinois. Defendant Preferred is an Illinois corporation with its principal place of business in Jersey County, Illinois.

Plaintiffs' Amended Complaint notes that venue is proper in this district because "both defendants reside in this District." d/e 15, p. 1). However, Jersey County, Illinois is within the Southern District of Illinois.

A civil action can be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." See 28 USCS §1391(b)(2). The Court finds venue is appropriate here, where the actions the Defendants have been accused of committing, the recording of deeds in violation of an Escrow Agreement, occurred in Greene County, Illinois. In addition, the entirety of the properties at issue here are two farms, both of which are situated in Greene County, Illinois. Greene County is indeed in this district, and venue is proper here as the actions and

property which form the basis of the breach of contract, the alleged breach of fiduciary duty, and fraud claims, namely the recording of deeds removed from escrow, occurred in Greene County. See 28 USCS §1391(b)(2).

## V.    ANALYSIS

Plaintiffs allege that Defendants committed breach of contract, breach of fiduciary duty, and common law fraud in various real estate transactions in 2022 and 2023. d/e 15. Defendants Tuttle and Preferred each make several arguments why dismissal is appropriate. The Court addresses each Defendant and the specific arguments in turn.

### A. Defendants' Motions to Dismiss Based on the Statute of Frauds are Denied.

Defendants Tuttle and Preferred each argue that Plaintiffs' breach of contract claim against them are barred by the Illinois Statute of Frauds, 740 Ill. Comp. Stat. Ann. 80/1, because Plaintiffs cannot produce a written agreement.

### i.    Plaintiffs' Breach of Contract Claim Against Defendants is Not Barred by the Statute of Frauds.

To properly allege a breach of contract, "whether oral or written," under Illinois law, a Plaintiff must show "the existence of a

13

valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant and resultant damages or injury to the plaintiff." Mission Measurement Corp. v. Blackbaud, Inc., 287 F. Supp. 3d 691, 715 (N.D. Ill. 2017). Here, Plaintiffs argue they, by Plaintiff Petersen, entered into an oral contract with Defendant Tuttle, on behalf of Defendant Tuttle, Defendant Preferred, and the Schneltens. d/e 15. This oral contract was an Escrow Agreement, that Defendant Tuttle, Andrea's attorney, would hold two deeds in escrow and not allow them to be recorded, until Andrea was approved for a refinancing loan to pay off creditors, including Plaintiff Petersen. d/e 15, ¶ 37. Plaintiffs allege that Defendant Tuttle was acting as an agent of Defendant Preferred in this agreement and that Defendant Tuttle and Preferred breached this Escrow Agreement when they recorded two deeds without Plaintiffs' knowledge as part of a conspiracy. d/e 15, ¶ 86.

Defendant Preferred argues that Plaintiffs' claim against it is barred the Illinois Statute of Frauds. d/e 17. Defendant Preferred argues that to satisfy the Statute of Frauds, an escrow agreement relating to the transfer of real estate and the agreement to transfer the interest in the real estate must both be in writing. d/e 18, p. 7.

14

Defendant Preferred argues Plaintiffs' Amended Complaint does not plead allegations as required or attach exhibits demonstrating that the Escrow Agreement satisfies the Statute of Frauds writing requirement. Id.

Plaintiff argues that no specific writing is necessary to proceed, as a plaintiff need not plead around affirmative defenses. Plaintiff further argues the cases cited by the Defendants do not relate to escrow agreements, and, therefore, the case law cited and analyzed is distinguishable. d/e 21.

Section 710 ILCS 80/2 bars claims for breach of a contract relating to the sale of land "unless such contract or some memorandum or note thereof [is] in writing and signed by the defendant." 710 ILCS 80/2. In general, whether an oral agreement is subject to the Statute of Frauds depends on whether "the contract was capable of being performed within one year after its formation", and not whether performance actually occurred within that time or if such occurrence is likely. See Barnes v. Michalski, 399 Ill. App. 3d 254 (2010); Hirtzer v. Avery Dennison Corp., 265 F.Supp.2d 936 (N.D. Ill. 2003) ("In Illinois the statute of frauds has been determined to mean that an oral contract is unenforceable only if it is impossible

15

to perform the contract within one year.").

Here, the alleged oral escrow agreement at issue could be fully performed in one year's time. This is true as the agreement was for holding executed deeds for recording until financing was approved. The parties allegedly formed an escrow agreement in early 2022, Defendant Tuttle prepared quit claim deeds for the real property in May 2022, Plaintiff Petersen executed the deeds in July 2022, Farm Credit approved the loan in September 2022, and the deeds were recorded immediately thereafter. d/e 15, pp. 5-9. Given the alleged oral escrow agreement could be completed within one year, it is not subject to the Statute of Frauds.

Even if the Statute of Frauds does apply, the statute is not generally a basis for dismissal, as the statute does not attack the sufficiency of the complaint. See Goldwater v. Greenberg, 2017 IL App (1st) 163003, ¶ 10. ("The statute of frauds is an affirmative defense which, if established, renders a contract voidable, not void."). A motion to dismiss an affirmative defense can be granted only if it is plain from the face of the complaint that the defense is meritorious. Hyson USA v. Hyson 2U, Ltd., 821 F.3d 935, 939 (7th Cir. 2016). Only when the plaintiff admits all the elements of an impenetrable

defense may a complaint be dismissed under Rule 12(b)(6). <u>Xechem,
Inc., v. Bristol-Myers Squibb Co.</u>, 372 F.3d 899, 901 (7th Cir. 2004).

Plaintiffs do not admit the absence of a writing to support their
contention of an escrow agreement to which all parties agreed. <u>See</u>
d/e 21. Rather, drawing reasonable inferences from Plaintiff's
Memorandum in Opposition and Plaintiff's Amended Complaint, it is
plausible Plaintiffs may produce writings that support their
allegations of an escrow agreement agreed to between the parties.
Plaintiffs' decision not to include any and all writings in support at
the pleading stage is not an adequate basis for dismissal at this
juncture as a plaintiff is not required to plead around affirmative
defenses at the pleading stage. <u>Hyson</u> at 939.

Defendants' Motions to Dismiss Plaintiffs' Amended Complaint
as barred by the Illinois Statute of Frauds is therefore DENIED.

**B. Plaintiffs Have Alleged Sufficient Facts that Defendant
Tuttle May Have Been Acting as Defendant Preferred's
Agent Regarding the Escrow Agreement at issue.**

Defendant Preferred also argues Plaintiffs fail to allege sufficient
facts that Defendant Tuttle acted as Defendant Preferred's agent in
agreeing to the Escrow Agreement at issue. d/e 18, pp. 8-10.

At the motion to dismiss stage, the Court is required to construe

17

the facts and all reasonable inferences in Plaintiffs' favor. <u>Bible v.</u>
<u>United Student Aid Funds, Inc.</u>, 799 F.3d 633, 639 (7th Cir. 2015).

Plaintiffs have alleged there was an Escrow Agreement entered
into by Plaintiff Petersen, his attorney Elliott Turpin, Defendant
Tuttle and Andrea, and Andrea provided the deeds executed by
Plaintiff Petersen to Defendant Tuttle to hold in escrow. d/e 15, ¶ 37,
38. Plaintiffs also allege that Elliott Turpin confirmed with Defendant
Tuttle that the deeds would only be released from escrow as part of a
refinancing agreement and payment to Plaintiff Petersen. d/e 15, ¶
39.

Defendant Preferred argues that Plaintiffs fail to plead any
actual facts establishing that Defendant Preferred was a party to the
Escrow Agreement or that Defendant Tuttle acted as its agent. d/e
17. Plaintiffs, in response, argue the Amended Complaint does indeed
note that Defendant Tuttle delivered deeds to Defendant Preferred for
recording before they were recorded, thereby Defendant Preferred
held them in escrow. d/e 21, p. 15. In support, Plaintiffs allege that
Defendant Tuttle's law firm prepared a settlement statement for a
Blue Ridge refinancing loan on March 7, 2023, which indicated
payment to Defendant Preferred for its title and escrow services. d/e

15, ¶ 63.

These facts, which the Court has reviewed in detail and most of which are unchallenged by Defendant Preferred, support a denial of Defendant Preferred's Motion to Dismiss. Although Defendant Preferred argues that Plaintiffs fail to plead sufficiently, the relationships between the parties are not fully known at this juncture. At this stage, the Plaintiffs have provided sufficient facts to move forward with their allegations against Defendant Preferred. Defendant Tuttle contacted Defendant Preferred for its services to the benefit of her clients for escrow and title services.

It is reasonable to infer that Defendant Preferred held the relevant deeds for a period of time and recorded them without informing Plaintiffs, even though Plaintiffs understood the recording would not occur until a refinancing loan was approved, with payment to Plaintiff Petersen thereafter. Whether Defendant Tuttle were indeed acting as an agent of Defendant Preferred requires a more developed record. However, Plaintiffs' Amended Complaint, as pled, provides enough facts to raise a reasonable expectation that discovery will reveal additional evidence supporting Plaintiffs' allegations against Defendant Preferred. See Indep. Tr. Corp. v.

Stewart Info. Servs. Corp. 665 F. 3d 930, 934-45 (7th Cir. 2012).

Therefore, Defendant Preferred's Motion to Dismiss and Memorandum in Support (d/e 17, 18) are DENIED.

## C. Defendant Tuttle's Motion to Dismiss is DENIED.

Defendant Tuttle argues Plaintiffs' Amended Complaint must be dismissed because: (1) it violates the Illinois Statute of Frauds; (2) Plaintiffs failed to plead the elements of an oral contract; (3) Plaintiffs cannot prove a claim for breach of fiduciary duty as Defendant did not owe them a duty as a matter of law; (4) Plaintiffs cannot prove a claim for breach of contract as Defendant did not owe them a duty as a matter of law and (5) Plaintiffs cannot plead fraud as no facts exist that support such claims. d/e 16.

The Court has already denied Defendant Tuttle's Motion to Dismiss regarding the statute of frauds argument and will also deny Defendant Tuttle's Motion to Dismiss the remaining counts against her. The Court will consider Defendant Tuttle's remaining four arguments in turn.

### 1. Plaintiffs have Alleged Facts Sufficient to Plead the Elements of an Oral Contract.

Defendant Tuttle argues that Plaintiffs have failed to plead the

elements of an oral contract (d/e 16) and that the Amended
Complaint must be dismissed on the breach of contract count for
failure to state a claim. Specifically, Defendant Tuttle argues that the
Amended Complaint does not set forth details regarding the terms of
the agreement at issue. Defendant Tuttle also argues that the details
provided are vague and do not reach the heart of the matter such
that Plaintiffs do not allege the required elements of contract
formation. Id.

To state a claim for breach of contract under Illinois law, a
plaintiff must allege the existence of a contract, plaintiff's substantial
performance of the contract, defendant's breach of the contract, and
a resulting injury to the plaintiff. Reger Dev., LLC v. Nat'l City Bank,
592 F.3d 759, 764 (7th Cir. 2010).

As this Court has noted previously, a complaint must contain
"a short and plain statement of the claim showing the pleader is
entitled to relief" that puts the defendant on notice of the allegations.
Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (quoting Fed. R.
Civ. P. 8(a)(2)).  The court accepts all well-pled facts alleged and draws
all possible inferences in the plaintiff's favor.  Tamayo v. Blagojevich,
526 F.3d 1074, 1081 (7th Cir. 2008).

Taking the well-pled facts in Plaintiffs' favor, at this juncture, Plaintiffs have alleged that the parties entered a contract in the form of an oral escrow agreement. Plaintiffs allege that Plaintiff Petersen provided executed deeds to Defendant Tuttle with the understanding the deeds would be recorded only upon securing a refinancing loan for purposes of repayment to creditors.

Plaintiffs further allege Defendant Tuttle breached this agreement by recording the deeds without informing Plaintiffs and failed to pay, and, thereby, Plaintiffs suffered injuries. d/e 15. Of course, this is an overview of the facts at issue here and does not include the specific nuances involving why Defendants may have so acted. However, the facts presented by the Plaintiffs have indeed placed Defendant Tuttle on notice as to the who, what, when, how, and where this claim originates. This is sufficient at this stage of litigation for Plaintiffs to move forward with their breach of contract claim. Therefore, Defendant Tuttle's Motion to Dismiss Plaintiffs' breach of contract claim is DENIED.

### 2. Plaintiffs have Sufficiently Pled a Breach of Fiduciary Duty.

The elements of a breach of fiduciary duty under Illinois law are

(1) a fiduciary relationship exists; (2) the fiduciary relationship was breached; and (3) such breach proximately caused injury. <u>Lawler v. N. Am. Corp. of Illinois</u>, 983 N.E.2d 414, 433 (Ill. 2012). "[A] fiduciary relationship 'may arise as a matter of law, such as between an agent and principal, or it may be moral, social, domestic, or personal.'" <u>Ball v. Kotter</u>, 723 F.3d 813, 825-26 (7th Cir. 2013) (citing <u>Kurtz v. Solomon</u>, 275 Ill. App. 3d 643, 656 N.E.2d 184, 190, 212 Ill. Dec. 31 (Ill. App. Ct. 1995)).

Absent a relationship arising as a matter of law, a fiduciary relationship and the attendant duties may arise as a result of the special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former. <u>Ransom v. A.B. Dick Co.</u>, 289 Ill. App. 3d 663, 682 N.E.2d 314, 321, 224 Ill. Dec. 753 (Ill. App. Ct. 1997).

Plaintiffs allege that Defendant Tuttle entered an agreement to hold executed quit claim deeds until Andrea, Defendant Tuttle's client, was approved for a refinancing loan for repayment to creditors, including Plaintiff Petersen. d/e 15. Plaintiffs allege that agreement created a fiduciary relationship. Plaintiffs indeed placed their trust in Defendant Tuttle to follow through with the terms of an escrow

23

agreement to the financial benefit of both her client and Plaintiff Petersen's. This does indeed allege a fiduciary duty. <u>See Avila v. CitiMortgage, Inc.</u>, 801 F.3d 777, 783 (7th Cir. 2015) (holding under Illinois law, an escrow agent owes a fiduciary duty to both the person making the deposition with the escrowee and to the person for whom the deposit is made).

Plaintiffs have sufficiently alleged the existence of an agreement with Defendant Tuttle, that Defendant Tuttle breached that relationship by failing to inform the parties as to the material terms of said refinancing loan, and by having the deeds recorded without informing the Plaintiffs, and that this breach resulted in damages to Plaintiffs.

Therefore, Defendant Tuttle's Motion to Dismiss Plaintiffs' breach of fiduciary duty claim is DENIED.

### 3. **Plaintiffs Have Sufficiently Pled a Breach of Contract Claim and a Duty on the Part of Defendant Tuttle**.

This Court has already discussed the elements required under Illinois law for a plaintiff to prove a breach of contract claim. Further, the Court has found Plaintiffs have met their burden, pursuant to Federal Rule 9(b), at this stage of this litigation to proceed with their

breach of contract claim against Defendant Tuttle.

Defendant Tuttle argues she does not owe Plaintiffs a duty as a matter of law. d/e 16. Defendant Tuttle argues that, since she was not acting in an attorney capacity on behalf of the Plaintiffs, she owed them no duty, and therefore, the breach of contract claim fails. d/e 16. In support, Defendant points to Plaintiffs' Amended Complaint which specifically mentions there is no attorney relationship between the Plaintiffs and Defendant Tuttle. d/e 15, 16.

The absence of an attorney-client relationship does not immediately end the inquiry of whether a duty existed on the part of Defendant Tuttle. Plaintiffs' assertions of Defendant Tuttle's actions and agreement to be an escrow agent tasked with holding deeds for recording sufficiently articulates a duty that survives the notice requirements at this stage, as this Court has already noted in this order. Further, per the Amended Complaint, Defendant Tuttle holding the deeds and recording them after refinancing was approved, was not only for the benefit of Defendant Tuttle's client, but also for the benefit of a third party, Plaintiff Petersen. Andrea told Plaintiff Petersen, and Defendant Tuttle reemphasized to Elliott Turpin, that Andrea would reimburse Plaintiff Petersen for the loans

he made in the past upon refinancing loan approval and recording of the deeds.

Plaintiffs have therefore articulated enough well-pled facts to sufficiently articulate a duty on behalf of Defendant Tuttle, which she allegedly breached when she violated the alleged escrow agreement. Therefore, Defendant Tuttle's Motion to Dismiss Plaintiffs' breach of contract claim is DENIED.

### 4. Plaintiffs Have Pled Facts Sufficient to Support Their Fraud Claims.

Counts IV and V of Plaintiffs' Amended Complaint allege claims against Defendant Tuttle for conspiring with Andrea to defraud the Plaintiffs of property and any monies that were reasonably owed to them. d/e 15. Counts IV and V allege two "schemes" out of the same nucleus, whereby Defendant Tuttle and Andrea allegedly swindled Plaintiff Petersen from farmland with no plan to pay him back for prior loans or for use of the real property as collateral.

Defendant Tuttle argues each of the fraud claims should be dismissed as Plaintiff Petersen acquiesced by granting Andrea title to property to obtain a refinancing loan, and that Plaintiff Petersen's willingness to assist in alleviating Andrea's financial troubles is not

evidence of fraud. d/e 16. Further, Defendant Tuttle argues she did not make any false statement directly to Plaintiff Petersen. <u>Id</u>. In opposition, Plaintiffs argue that Plaintiff Petersen's agreement - to allow Andrea to use his real property for collateral to obtain a repayment loan which would not only benefit Andrea but allow Andrea to pay Plaintiff Petersen back - does not justify a "scheme" to take the properties for free. d/e 21, p. 23. Additionally, Plaintiffs argue Defendant Tuttle's scheme included not only misrepresentations from Andrea to Plaintiff Petersen, but also misrepresentations from Defendant Tuttle to Elliott Turpin, Plaintiff Petersen's attorney.

Alleging fraud in federal court triggers the heightened pleading standard of Fed. R. Civ. P. 9(b). <u>Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.</u>, 631 F.3d 436, 446-47 (7th Cir. 2011). To allege fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. <u>AnchorBank, FSB v. Hofer</u>, 649 F.3d 610, 615 (7th Cir. 2011). In Illinois, the basic elements of common law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce

the plaintiff to act; (4) plaintiff's reliance upon the statement; and (5) plaintiff's damages resulting from reliance on the statement." <u>Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP</u>, 475 F.3d 824, 841 (7th Cir. 2007) (citing <u>Connick v. Suzuki Motor Co., Ltd.</u>, 174 Ill. 2d 482, 675 N.E.2d 584, 591, 221 Ill. Dec. 389 (Ill. 1996)).

Plaintiffs allege that Defendant Tuttle's false statements to Elliott Turpin, combined with Andrea's false statements to her father are false statements of material fact which induced Plaintiff Petersen's participation. d/e 15. These false statements, or misrepresentations, as Plaintiffs allege, included phone calls and email communications about copies of deeds for release and what those deeds were to be used for. <u>Id</u>.

Further, Plaintiffs allege Defendant Tuttle and Andrea knew the rationale they provided to Plaintiffs for the execution and recording of deeds was indeed false. Specifically, Plaintiffs argue Defendant Tuttle and Andrea informed them that a new refinancing loan was being finalized to pay back creditors, including Plaintiff Petersen. In reality, the 2022 Farm Credit Loan was negotiated, intended, and used to pay off the debt that the Schneltens previously defaulted on. No proceeds from the 2022 Farm Credit Loan were to be paid to any

other creditors, including Plaintiff Petersen's $200,000 loan. d/e 15. Plaintiffs also argue that the 2023 Loan to Andrea in the amount of $195,000 was the result of an additional fraud. This loan of $195,000 was provided from Plaintiff Petersen, and Andrea had provided the same rationale, that she needed funds to pay creditors and that a refinancing loan had not yet been approved. This was also done, as Plaintiffs allege, in conjunction with Defendant Tuttle. Plaintiffs argue that Defendant Tuttle took specific steps to ensure Plaintiffs had no knowledge of the specifics of the loans and eventual mortgage that was placed on the real property at issue.

Lastly, in support of their fraud claims, Plaintiffs allege that Plaintiff Petersen executed deeds to Andrea for the real property at issue as a result of Defendant Tuttle's misrepresentations and omissions, and as part of a common scheme to defraud. Further, Plaintiffs argue that Plaintiff Petersen was unaware of what this collateral would be used for, and that the deeds would be removed from escrow and recorded by Defendant Preferred without Plaintiff Petersen's knowledge.

Plaintiffs have pled each of the fraud elements required to put Defendant Tuttle specifically on notice of Plaintiffs' claims. Therefore,

the Court finds that Plaintiffs have pled with enough specificity to move forward on each of their fraud claims against Defendant Tuttle. Defendant Tuttle's motion to dismiss each of the fraud claims is therefore DENIED.

### D.    CONCLUSION

For the reasons stated above, Defendant Tuttle's and Defendant Preferred's Motions to Dismiss (d/e 16, 17) are DENIED.


**ENTERED:  July 8, 2025.**

**FOR THE COURT:**

/s/ Sue E. Myerscough

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**